UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| NORLENE LAFFERTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil No. 7:20-cv-00146-GFVT |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL ) | **MEMORANDUM OPINION** |
| SECURITY, ) | **&** |
| ) | **ORDER** |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Norlene Lafferty seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied her claim for Title II Disability Insurance Benefits. Ms. Lafferty now seeks judicial review pursuant to 42 U.S.C. § 405(g), alleging that the Commissioner erred in denying her claim. The Court, having reviewed the record and for the reasons set forth herein, will REVERSE the Commissioner's decision and REMAND for further proceedings.

**I**

**A**

Ms. Lafferty initially filed an application for Title II Disability Insurance Benefits on August 10, 2018, alleging disability beginning October 13, 2015. [Transcript (hereinafter, "Tr.") 191–94.] Her claim was denied on September 27, 2018, and then again on January 31, 2019. [Tr. 125–28, 133–39.] Ms. Lafferty filed a request for a hearing on February 7, 2019, and on January 16, 2020, Administrative Law Judge (ALJ) Nathan Brown presided over the hearing from Huntington, West Virginia, and Ms. Lafferty appeared by video from Prestonsburg,

Kentucky. [Tr. 34–93, 140–41.] On February 11, 2020, the ALJ rendered a decision concluding that Ms. Lafferty was not disabled. [Tr. 12–33.] The Appeals Council denied Ms. Lafferty's request for review, making the February 11, 2020, ALJ decision final. [Tr. 1–6.]; 20 C.F.R. § 422.210(a).

To evaluate a claim of disability for Title II disability insurance benefit claims, an ALJ conducts a five-step analysis. 20 C.F.R. § 404.1520. First, if a claimant is performing a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, she does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is "disabled." C.F.R. § 404.1530(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of her past relevant work, and if a claimant's impairments do not prevent her from doing past relevant work, she is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work experience) prevent her from doing other work that exists in the national economy, then she is "disabled." 20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving her lack of residual functional capacity. *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At step one, the ALJ found Ms. Lafferty had not engaged in substantial gainful activity since the alleged onset date, October 13, 2015. [Tr. 17.] At step two, the ALJ found Ms. Lafferty to suffer from the following severe impairments: "bilateral hand osteoarthritis, bilateral ankle/foot osteoarthritis/degenerative joint disease, diabetes mellitus, degenerative disc disease, obesity, and peripheral neuropathy." *Id.* At step three, the ALJ determined that Ms. Lafferty's combination of impairments did not meet or medically equal one of the listed impairments in C.F.R. Part 404. *Id.* Before moving on to step four, the ALJ considered the record and determined the following about Ms. Lafferty's residual functioning capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she is capable of lifting, carrying, pushing, or pulling 10lbs occasionally and less than 10lbs frequently; sitting for six hours; and standing or walking for two hours in a work day. She can operate foot controls with the right foot occasionally. She can operate foot controls with the left foot frequently. She can operate hand controls bilaterally frequently. She can handle and finger items frequently bilaterally. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, never crouch, and crawl occasionally. The claimant can never work at unprotected heights, can never work around moving mechanical parts, and can operate a motor vehicle occasionally. She can work in wetness occasionally, in extreme cold occasionally, and in vibration occasionally. She frequently needs a cane to ambulate on all surfaces.

[Tr. 20.] After explaining the RFC, the ALJ found at step four that Ms. Lafferty is not capable of performing any past relevant work. [Tr. 25.] At step five, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." *Id.* Accordingly, the ALJ determined at step five that Ms. Lafferty was not disabled since October 13, 2015. [Tr. 26–27.] Ms. Lafferty filed this action for review on November 23, 2020. [R. 1.]

B

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319–20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of*

4

*Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## II

Ms. Lafferty presents two arguments as grounds for relief from the ALJ's unfavorable decision. Specifically, she argues (1) "the vocational expert improperly classified Ms. Lafferty's past work and as a result, incorrectly determined Ms. Lafferty had transferable skills," and (2) "the ALJ inaccurately assessed Ms. Lafferty's education." [R. 14-1 at 1.] The Court will address each argument in turn.

## A

Ms. Lafferty first argues that the vocational expert incorrectly classified Ms. Lafferty's past work and therefore incorrectly determined that she had transferable skills. [R. 14-1 at 2.] Ms. Lafferty started working as a housekeeper at a nursing home in 1999. However, during her time at the nursing home she rose through the ranks, also working as an activity director, office management and administrator, and working supervisor. [Tr. 41–44, 235.] She also worked in the kitchen when the kitchen was down two cooks. [Tr. 42.] In these roles, she completed a wide range of tasks, including shoveling snow and removing water from the building when it flooded, lifting mattresses and also lifting patients if they needed assistance, bathing patients, and lifting up to sixty pounds while working in the kitchen. *Id.* On the clerical side as a working supervisor, Ms. Lafferty used a copy machine and telephone, used a computer for the QuickBooks program and to print forms that she would then handwrite, and she ordered supplies.

[Tr. 80.] However, Ms. Lafferty testified that she cannot type, and although she was familiar with the Notes computer program, she testified that she has not used Microsoft Word, Excel, or PowerPoint. *Id.* In fact, much of her clerical supervisory work was done by hand or on the telephone instead of a computer.

During the Administrative Hearing, the vocational expert at first testified that Ms. Lafferty performed work as an office manager, which could be classified as sedentary, skilled, specific vocational preparation (SVP) of 7. [Tr. 74.] However, after hearing Ms. Lafferty's additional testimony at the hearing clarifying her level of computer literacy, the vocational expert determined that Ms. Lafferty had past relevant work as a general office clerk with an SVP of 4. [Tr. 87.] The vocational expert testified that the skills that would transfer from Ms. Lafferty's past work from the general office clerk position included the ability to "add, audit, balance check account, divide, endorse, itemize, post, pro-rate, tabulate, type and write…advise, answer, explain, read, speak." [Tr. 75.] The vocational expert also found that Ms. Lafferty's transferrable skills, residual functional capacity and vocational factors meant that she could perform the semi-skilled occupations of identification clerk, with 10,000 available jobs nationally, and sorter, with 30,000 available jobs nationally. [R. 14-1 at 4 (citing Tr. 25–26); R. 16 at 3 (citing Tr. 26, 76–77, 88–89).]

After reviewing the record, the Court finds that substantial evidence supports the vocational expert's testimony. The DOT specifies that a general office clerk does the following:

> Compiles and maintains records of business transactions and office activities of establishment, performing variety of following or similar clerical duties and utilizing knowledge of systems or procedures: Copies data and compiles records and reports. Tabulates and posts data in record books. Computes wages, taxes, premiums, commissions, and payments. Records orders for merchandise or service. Gives information to and interviews customers, claimants, employees, and sales personnel. Receives, counts, and pays out cash. Prepares, issues, and sends out receipts, bills, policies, invoices, statements, and checks. Prepares stock

>  inventory. Adjusts complaints. Operates office machines, such as typewriter, adding, calculating, and duplicating machines. Opens and routes incoming mail, answers correspondence, and prepares outgoing mail. May take dictation. May greet and assist visitors. May prepare payroll. May keep books. May purchase supplies. May operate computer terminal to input and retrieve data.

Dictionary of Occupational Titles, *Administrative Clerk (clerical)*, https://occupationalinfo.org/21/219362010.html (last visited Mar. 1, 2022). Ms. Lafferty's biggest contention is that the vocational expert incorrectly classified her as having past relevant work experience as an office clerk even though she cannot type, has never used such programs as Microsoft Word, Excel, or PowerPoint, and has not computed wages, taxes, and premiums. [R. 14-1 at 2–3.] However, the Court finds that the vocational expert carefully took Ms. Lafferty's experience into account in making her findings. The vocational expert was careful to adjust her determination that Ms. Lafferty had past relevant work as an office clerk with an SVP of 7 to an SVP of 4 to account for Ms. Lafferty's additional testimony that she could not type and had not used certain computer programs such as Microsoft Word, Excel, and PowerPoint.

Furthermore, a review of the record shows that substantial evidence supports the vocational expert's finding that Ms. Lafferty had past relevant work experience as an office clerk. Ms. Lafferty worked in an officer administrator role for approximately a decade. [Tr. 235.] She supervised other employees, used a computer including the Notes program and the QuickBooks program to print checks and pay bills, she ordered supplies for the facility, she updated address information for residents with the Social Security Office, she used the copy machine, she interfaced with staff and residents, and she filled out and filed paperwork. [Tr. 69, 73, 208, 235–40, 299.] While the DOT requires an office clerk to be able to operate office machines, the reference to a typewriter follows the phrase "such as,"[1] which implies that a

---

[1] The phrase "such as" generally means "for example" or "like or similar to (something specified)." Collins English Dictionary, *such as*, https://www.collinsdictionary.com/us/dictionary/english/such-as (last visited Mar. 1, 2022).

7

typewriter is the kind of machine an office clerk should be able to use, not that Ms. Lafferty must know how to use a typewriter.  Furthermore, while Ms. Lafferty may not know how to type, an office clerk need only know how to operate a computer, which she does, as evidenced by her use of certain programs such as QuickBooks and Notes.  Accordingly, the Court finds that substantial evidence supports the vocational expert's conclusion that Ms. Lafferty had acquired past relevant work as an office clerk that was transferrable to other jobs in the national economy.[2]

Ms. Lafferty also argues that the two jobs identified by the vocational expert, identification clerk and sorter, do not exist in significant enough numbers in the national economy.  [R. 14-1 at 5.]  The vocational expert testified that there were 10,000 identification clerk jobs national and 30,000 sorter jobs nationally.  While the Sixth Circuit has declined to set a specific number of available jobs that constitutes a "significant number," *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988), several cases are instructive.  The Sixth Circuit has previously held that 6,000 jobs in the national economy satisfied the "significant numbers" requirement. *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016).  The Sixth Circuit has also found 4,800 jobs sufficient to meet the standard.  *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578–79 (6th Cir. 2009).  If fewer than 5,000 jobs in the national economy satisfies that requirement, 40,000 certainly meets the requirement as well, and the Court finds that Ms. Lafferty's argument is without merit.

---

[2] Ms. Lafferty also briefly points to a state agency finding that Ms. Lafferty was limited to Grid Rule 202.13, which "is closely approaching advanced age with unskilled work" as evidence that the vocational expert's findings were not supported by substantial evidence.  [R. 14-1 at 5.]  However, as Ms. Lafferty acknowledges, the state agency was relying on a "skeleton portion of the medical records" in making its determination.  *Id.*  The vocational expert, on the other hand, had a fuller and more accurate picture of Ms. Lafferty's background, and the Court accordingly finds that this argument is without merit.

**B**

Ms. Lafferty also argues that the ALJ inaccurately assessed Ms. Lafferty's educational level in reaching his decision. [R. 14-1 at 6.] The ALJ specifically found that Ms. Lafferty "has at least a high school education." [Tr. 25.] However, Ms. Lafferty argues this is not correct because she testified that she quit school in the eleventh grade and failed the GED both times she attempted it. [Tr. 44–45.] Ms. Lafferty argues that this error is concerning for several reasons. First, she is concerned that the vocational expert may have inaccurately considered her education level since "[t]he ALJ never specifically stated that Ms. Lafferty had a 'limited' education in the hypothetical." [R. 14-1 at 6.] Furthermore, Ms. Lafferty argues that this does not constitute harmless error because her educational level is particularly important given the fact that "her ability to perform the transferable skills the vocational expert found" is also at issue. [R. 14-1 at 6–7.] Ms. Lafferty is also concerned that the ALJ may not have even been considering "the appropriate record for the claimant as there is no indication anywhere in this claim that Ms. Lafferty has anything other than a limited education." *Id.* at 7.

In response, the Commissioner argues there is a conflict in the evidence. [R. 16 at 8.] Although Ms. Lafferty testified that she quit school in the eleventh grade, a Disability Report Form in the record indicates that she completed the twelfth grade in 1999. [Tr. 208.] Furthermore, the Commissioner argues that whether Ms. Lafferty had an eleventh or twelfth grade education is irrelevant for multiple reasons. First, it is likely that the vocational expert contemplated Ms. Lafferty's educational level because the expert was present when Ms. Lafferty testified that she only had an eleventh-grade education. [R. 16 at 8–9.] Second, even with limited education, a finding of "not disabled" would still be appropriate under Medical-Vocational Rules 201.03 and 201.11. *Id.* at 9. The Commissioner also argues that Ms. Lafferty

9

failed to argue that "the jobs identified by the ALJ required a high school education" and therefore she failed to meet her "burden of showing that the categorization of her education would have changed the vocational expert's testimony or the ALJ's ultimate decision." *Id.* (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

The Court finds that the ALJ's determination that Ms. Lafferty had a twelfth-grade education is not supported by substantial evidence. In fact, the ALJ's decision appears to be internally inconsistent on the issue of Ms. Lafferty's education. The ALJ references Ms. Lafferty's testimony in which Ms. Lafferty "testified that she…has an eleventh grade education. She made poor grades in school and failed the GED test twice." [Tr. 21.] Then, several pages later, the ALJ determined, without further extrapolation or explanation, that Ms. Lafferty "has at least a high school education." [Tr. 25.]

While it is true that Ms. Lafferty's Disability Report Form states that she completed twelfth grade in 1999 and the Form was part of the record, the ALJ does not reference or mention the Disability Report Form in his decision. Ms. Lafferty testified that in 1999 her second child was in kindergarten, and that she attended Carl D. Perkins Center for three months for training "on everyday living." [Tr. 45.] Furthermore, the training she received at the Carl D. Perkins Center included such information as how to shop and balance a checkbook but did not culminate in a GED or further Ms. Lafferty's high school education. *Id.* Ms. Lafferty also started working at the nursing home in 1999. [Tr. 235.] "It is the ALJ's function to weigh conflicting evidence and make credibility determinations." *Barnett v. Secretary of Health and Human Services*, 1987 WL 36614, at *3 (6th Cir. Jan. 13, 1987); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("We recognize that the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. The ALJ's

findings, however, must be supported by specific, cogent reasons.") (citations omitted). Furthermore, an ALJ should provide a coherent explanation for how he arrived at his conclusions to permit the Court to conduct judicial review. *Cf. Russ v. Comm'r of Soc. Sec.*, 2021 WL 3709916, at *9 (N.D. Ohio Aug. 20, 2021) (citing *Scott v. Barnhart*, 297 F.3d 589, 959 (7th Cir. 2002)). Here, however, there is no indication that the ALJ weighed the conflicting evidence as to Ms. Lafferty's education because the ALJ provided no explanation at all. Instead, the ALJ asserted that Ms. Lafferty testified she had an eleventh-grade education and no GED and then subsequently concluded that she had a high school education without additional explanation or attempt to reconcile the conflicting evidence in the record.

The proper determination of Ms. Lafferty's education is significant because it impacts the appropriate Medical-Vocational Rule that should be applied to Ms. Lafferty's case and may ultimately impact her disability finding. The Federal Regulations instruct that individuals with a seventh-grade to eleventh-grade education should generally be considered to have limited education, which would prevent them from doing "most of the more complex job duties needed in semi-skilled or skilled jobs." 20 CFR 404.1564(b)(3). However, individuals with a twelfth-grade education or above are generally considered to be individuals with the "educational abilities [to] do semi-skilled through skilled work." 20 CFR 404.1654(b)(4). Here, the ALJ found that Ms. Lafferty was not disabled under Medical-Vocational Rule 201.15 and Rule 201.07, both of which require the individual in question to have a high school degree. [Tr. 26.] If Ms. Lafferty never completed high school and does not have a GED, that means the incorrect Medical-Vocational Rules were applied in her case.

Furthermore, the Commissioner agrees with Ms. Lafferty that although the vocational expert was present for Ms. Lafferty's testimony, it is not clear from the record that the vocational

11

expert's hypothetical properly limited Ms. Lafferty's education in determining the number of available jobs in the national economy. [*See* R. 16 at 8.] Even apart from potential confusion as to Ms. Lafferty's education level, the vocational expert was already wavering on Ms. Lafferty's past relevant work, changing the classification from office manager with an SVP of 7 to general office clerk with an SVP of 4 during the hearing. [Tr. 74, 87.] Ms. Lafferty not only did not finish high school, but she failed the GED twice. Given the questions surrounding Ms. Lafferty's ability to perform certain transferable skills from her past work, it is particularly important that Ms. Lafferty's education level be properly assessed.

Although the Commissioner argues that Ms. Lafferty's educational level is essentially irrelevant because she would be found not disabled under Medical-Vocational Rules 201.03 and 201.11, the Court finds that remand for further proceedings is appropriate at this stage so the ALJ can address and clarify Ms. Lafferty's level of educational achievement and apply the correct Medical-Vocational Rule. *Perry v. Berryhill*, 2017 WL 840382, at *7–8 (N.D. Cal. Mar. 3, 2017) (reversing ALJ's decision because the ALJ relied on the plaintiff's Disability Report that stated he completed the 12th grade instead of the plaintiff's testimony that he only had an eleventh-grade education); *Robinson v. Colvin*, 2015 WL 1412096, at *3–4 (W.D. Pa. Mar. 26, 2015) (finding ALJ erred in finding plaintiff had at least a high school education when evidence indicated plaintiff dropped out of school in the eleventh grade and does not have a GED).

### III

Accordingly, pursuant to sentence four of 42 U.S.C. section 405(g) and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Norlene Lafferty's Motion for Summary Judgment **[R. 14]** is **GRANTED IN PART** and **DENIED IN PART**;

2. The Commissioner's Motion for Summary Judgment **[R. 16]** is **GRANTED IN PART** and **DENIED IN PART**;

3. The ALJ's decision is **REVERSED** and this action is **REMANDED** for further administrative proceedings consistent with this order; and

4. Judgment in favor of the Plaintiff shall be entered promptly.

This the 7th day of March, 2022.

Gregory F. Van Tatenhove
United States District Judge